■ In the Matter of CITY OF UTICA, Appellant, v RICHARD F. DAINES, as Commissioner of Health, et al., Respondents. [944 NYS2d 361]—

Egan Jr., J. Appeals (1) from an order of the Supreme Court (McGrath, J.), entered January 6, 2011 in Albany County, which, in a proceeding pursuant to CPLR article 78, among other

things, granted a motion by Utica Ambulance Service, Inc. to intervene, and (2) from a judgment of said court, entered June 24, 2011 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent New York State Emergency Medical Services Council denying petitioner's application for a certificate of need for its ambulance service.

Public Health Law article 30 governs—insofar as is relevant here—the certification of ambulance services in the state (*see* Public Health Law § 3000 *et seq.*). Pursuant to the terms thereof, no ambulance service may commence operations without a valid operating certificate (*see* Public Health Law § 3005 [1]), and any new ambulance service seeking to operate in a given locale must first secure the approval of the appropriate regional emergency medical services council (hereinafter REMSCO) (*see* Public Health Law §§ 3003, 3005 [6]), which is vested with the authority "to make determinations of public need for the establishment of additional . . . ambulance services" (Public Health Law § 3003 [5]) in accordance with the provisions of Public Health Law § 3008.[1] Assuming that hurdle is cleared, the applicant is issued what the parties have denominated as a "certificate of public need" for a two-year period (*see* Public Health Law § 3005 [4]).[2]

Because "[n]ot less than one-third of the membership" of each REMSCO must consist of representatives of existing ambulance service providers (Public Health Law § 3003 [2]), municipalities seeking to provide ambulance services to their citizens were deemed to be "at a distinct disadvantage when applying for a determination of public need . . . because they must be approved by the [very] groups they are proposing to replace" (Assembly Introducer's Letter [Assembly Bill A10611-A], July 23, 1992, Bill Jacket, L 1992, ch 850, at 18). To that end, the Legislature amended Public Health Law § 3008 in 1992 (*see* L 1992, ch 850, § 1) to make it easier for a municipality to obtain a certificate of public need by providing that once "the munici-

1. "Public need" is defined as "the demonstrated absence, reduced availability or an inadequate level of care in ambulance or emergency medical service available to a geographical area which is not readily correctable through the reallocation or improvement of existing resources" (Department of Health Policy Statement No. 06-06, at 4 [May 26, 2006]).

2. Although Public Health Law § 3005 indeed contains references to a "valid operating certificate" (*Public Health Law § 3005 [1]*) and the determination of "public need" (Public Health Law § 3005 [6]), the phrase "certificate of public need" does not actually appear anywhere therein—an observation we make only to highlight the often confusing and sometimes inconsistent nature of the underlying statutory scheme (*see* n 3, *infra*).

pal ambulance service meets appropriate training, staffing and equipment standards, there should be a presumption in favor of approving the [underlying] application" (Public Health Law § 3008 [6]). When this amendment fell short of its stated goal of "guarantee[ing] [municipalities] equal consideration among existing ambulance services" (Sponsors' Mem [NY Senate-Assembly Bill S7660-A, A10611-A], Bill Jacket, L 1992, ch 850), the Legislature again amended Public Health Law § 3008 in 1997 (*see* L 1997, ch 510, § 1) to permit municipalities to begin operating ambulance services for a two-year period without first obtaining a certificate of public need. Thus, in accordance with Public Health Law § 3008 (7) (a), a municipal ambulance service that has satisfied all other pertinent requirements—i.e., municipal authorization to establish an ambulance service and demonstrated compliance with respondent Department of Health's standards governing training, staffing and equipment—"shall be deemed to have satisfied any and all requirements for determination of public need for the establishment of additional emergency medical services pursuant to [Public Health Law article 30] for a period of two years." At the end of that initial two-year period, the municipality may apply for certification to continue to provide ambulance service to its citizens (*see* Public Health Law § 3008 [7] [b]), and "where [that] proposed service meets or exceeds the appropriate training, staffing and equipment standards, there shall be a strong presumption in favor of approving the [municipality's] application."[3]

Against this backdrop, petitioner adopted a resolution authorizing the Utica Fire Department to operate an ambulance service, and thereafter was granted a two-year operating certificate for that purpose. On August 1, 2005, petitioner began providing such service to its citizens. Prior to the expiration of that initial two-year certificate in 2007, petitioner applied to the appropriate REMSCO for approval to continue operation of its municipal ambulance service. Legal proceedings ensued (*see City of Utica v Daines*, 53 AD3d 922 [2008]), as a result of which petitioner resubmitted its application to REMSCO in December 2008. Following a public hearing, REMSCO denied petitioner's application, and petitioner appealed to respondent New York

---

**3.** Although the phrase "strong presumption" is not defined in the statute, we accord the word "strong" the meaning commonly found in numerous dictionaries and thesauri, i.e., powerful, substantial and significant. We further note that although the "strong presumption" contained in Public Health Law § 3008 (7) (b) presumably was added to replace the "presumption" set forth in Public Health Law § 3008 (6), the latter subdivision remains—albeit somewhat curiously—intact.

State Emergency Medical Services Council (hereinafter SEM-SCO) (*see* Public Health Law § 3002 [3]). Petitioner's administrative appeal proved to be unsuccessful, prompting it to commence this CPLR article 78 proceeding to challenge SEMSCO's determination.[4] Supreme Court granted a motion to intervene brought by Utica Ambulance Service, doing business as Kunkel Ambulance Service (hereinafter Kunkel), a privately-owned company that provided ambulance service in the City of Utica, Oneida County for some time prior to 2005, and thereafter dismissed the underlying petition, finding that SEMSCO's determination was rational. These appeals by petitioner ensued.[5]

Of the various arguments raised by petitioner, only one warrants discussion. To be sure, our inquiry here is limited to ascertaining whether the determination rendered by SEMSCO, which denied petitioner's application for certification of its municipal ambulance service, is arbitrary, capricious or otherwise affected by an error of law (*see generally Matter of Lamar Cent. Outdoor, LLC v State of New York*, 64 AD3d 944, 947 [2009]). For that reason, we readily agree that the quality, sufficiency or persuasive effect of the proof submitted by petitioner in support of its application are matters entrusted—in the first instance—to REMSCO and, ultimately, are issues for SEMSCO to consider and resolve.[6] In undertaking that deliberative process, however, both REMSCO and SEMSCO are bound by Public Health Law § 3008 (7) (b), which expressly provides that "where the proposed service meets or exceeds the appropriate training, staffing and equipment standards, there shall be a strong presumption in favor of approving the application" (*see* Department of Health Municipal Certificate of Need [Muni-CON]: An Overview, at 3 [rev 2009]).[7] As our review of the record reveals that neither entity accorded petitioner's application the strong

---

**4.** Petitioner obtained a stay of the denial of its application pending the outcome of this proceeding and, as such, continues to operate its ambulance service to this day.

**5.** The order granting Kunkel intervenor status is not appealable as of right (*see* CPLR 5701 [b] [1]) and, although petitioner's appeal from the final judgment brings such order up for review, petitioner has not briefed this issue on appeal. Hence, we deem petitioner's appeal from Supreme Court's order to be abandoned (*see Matter of Michael OO.*, 53 AD3d 709, 709 [2008]).

**6.** That said, we note in passing that there is nothing in the record to suggest that the quality of service provided by either petitioner or Kunkel is in any way deficient.

**7.** Notably, this statutory presumption is reflected in the Department of Health's "overview," which notes that "[t]he two[-]year period of proper operation of the service supports the determination of need" (Department of Health Municipal Certificate of Need [Muni-CON]: An Overview, at 3 [rev 2009]).

presumption required by the statute, we conclude that SEM-SCO's determination must be annulled.

As a starting point, the record fails to disclose that REMSCO was even aware of—much less applied—the strong presumption set forth in Public Health Law § 3008 (7) (b).[8] Neither the transcript of the public hearing before REMSCO's ambulance committee, the Hearing Officer's written report, the ambulance committee's subsequent meeting minutes/recommendation nor the transcript of REMSCO's discussion of and vote upon petitioner's application makes any mention of the underlying presumption. Indeed, the only insight into REMSCO's analytical process may be found in its brief filed in connection with petitioner's administrative appeal—a document that focuses, in large measure, upon the level of service provided by Kunkel, the existing private ambulance service provider, and, in so doing, evidences REMSCO's fundamental misapprehension of the underlying statutory scheme.

It is true, as respondents point out, that the presumption set forth in Public Health Law § 3008 (7) (b) does not guarantee approval of petitioner's application. However, that presumption is rendered meaningless if REMSCO's inquiry distills to whether petitioner has proved that it can do a better job than Kunkel, which—as the record reflects—is precisely the analysis that REMSCO undertook here. In its administrative appeal brief, REMSCO chastised petitioner for "confiscati[ng]" 40% of Kunkel's business, argued that "there was never a need" for petitioner to provide ambulance service in the first instance[9] and—perhaps most tellingly—asserted that petitioner "failed to

---

**8.** Although this Court's inquiry indeed ultimately must distill to whether SEMSCO properly considered such presumption in rendering its determination, an examination of the manner in which REMSCO approached and treated petitioner's application nonetheless is relevant—both in terms of providing a historical context and, more to the point, of demonstrating that the administrative review of petitioner's application, as well as the manner in which the statutory presumption was interpreted and applied, was flawed from the outset. This is particularly true given that REMSCO's demonstrated analytical shortcomings were in no way mitigated—much less remedied—by the review process subsequently undertaken by SEMSCO.

**9.** This statement is particularly troubling, as it not only flies in the face of Public Health Law § 3008 (7) (a) but, to our analysis, suggests that REMSCO essentially adopted a "look back" approach and erroneously focused upon whether petitioner should have been granted its initial operating certificate in 2005. In other words, instead of examining the service that petitioner actually provided during the two-year period, which, as noted previously, directly speaks to the determination of need (see Department of Health Municipal Certificate of Need [Muni-CON]: An Overview, at 3 [rev 2009]), REMSCO opted to dwell upon whether petitioner should have been permitted to enter the ambulance service market at all.

demonstrate that [it] could do anything different or . . . better than Kunkel." Surely that sort of skewed analysis is not what the Legislature intended when it accorded municipalities such as petitioner the strong presumption embodied in Public Health Law § 3008 (7) (b).

Although an Administrative Law Judge subsequently recommended overturning REMSCO's decision—noting that "there [was] no reference anywhere in the record indicating that at any time . . . REMSCO acknowledged any presumption in favor of [petitioner's] application"—petitioner ultimately fared no better before either SEMSCO's systems committee or its full membership. The discussion at the committee level reflected continued confusion as to the proper application of the statutory presumption,[10] impermissibly questioned the need for petitioner to enter the ambulance service market back in 2005 and improperly focused upon whether Kunkel was capable of single-handedly serving the community's ambulance service needs. Similarly, when SEMSCO's membership met to vote upon petitioner's appeal, there was virtually no discussion of the merits of petitioner's application. Rather, REMSCO's chair—the only individual to even reference the statutory presumption during the course of this meeting—simply urged SEMSCO to disregard the observations made by the Administrative Law Judge and uphold REMSCO's prior decision, citing the manner in which petitioner "displaced" Kunkel as the primary service provider in 2005 and highlighting what he regarded as petitioner's "fail[ure] to persuade [REMSCO] that it had . . . stronger or better evidence regarding the existence of public need" than Kunkel had put forth. In short, although SEMSCO's systems committee paid lip service to the statutory presumption, there was no dialogue regarding the presumption when SEMSCO's full membership met to vote upon petitioner's application (*see* Public Health Law § 3002 [3]). More to the point, it is readily apparent from a review of the record that SEMSCO failed, in the final analysis, to actually accord petitioner's application the benefit of the statutory presumption.

For all these reasons, we are persuaded that both REMSCO and SEMSCO failed to adhere to the statutory framework

---

**10.** Notably, one of SEMSCO's members insisted that, after the initial two-year period identified in Public Health Law § 3008 (7) (a), "[t]he municipalities get no different treatment . . . Once that two years expires they are . . . subject to the same scrutiny as a private . . . ambulance corps must go through in order to prove need and then obtain a certificate." That analysis is not only contrary to Public Health Law § 3008 (7) (b) but, if followed to its logical conclusion, renders the statutory presumption meaningless and, in essence, dooms a municipality's application for certification to failure.

established by Public Health Law article 30, neglected to follow the Department of Health's interpretation thereof and, most notably, failed to actually afford petitioner's application the strong presumption of approval to which it was entitled pursuant to Public Health Law § 3008 (7) (b). Accordingly, SEMSCO'S determination is annulled, and petitioner's application is granted to that extent. Petitioner's remaining contentions, including its assertion that the Department of Health's requirement and/or definition of public need violates various provisions of the General Municipal Law and the State Administrative Procedure Act, are either not properly before us or have been examined and found to be lacking in merit.

Malone Jr. and McCarthy, JJ., concur.

Stein, J. (dissenting). Because in our view respondent New York State Emergency Medical Services Council (hereinafter SEMSCO) considered the relevant circumstances and accorded petitioner's application the benefit of the statutory presumption, we respectfully dissent. We concur with Supreme Court's conclusions that SEMSCO[11] recognized the presumption to which petitioner was entitled in determining its application for a certificate of public need and that such presumption was effectively rebutted by the information provided by Utica Ambulance Service, Inc., doing business as Kunkel Ambulance Service (hereinafter Kunkel).

A presumption is nothing more than "[a] legal inference or assumption that a fact exists, based on the known or proven existence of some other fact or group of facts . . . A presumption shifts the burden of production or persuasion to the opposing party, who can then attempt to overcome the presumption" (Black's Law Dictionary 1223 [8th ed 2004]). Here, absent any explicit language to the contrary, the presumption afforded to petitioner pursuant to Public Health Law § 3008 (7) (b) is rebuttable and does not guarantee approval of petitioner's application. While, as the majority notes, the presumption was intended to *level* the playing field between municipal and private applicants, it does not give municipalities a preference or advantage, nor does it completely obviate the requirement that

---

**11.** While acknowledging that SEMSCO, not the Regional Emergency Medical Services Council (hereinafter REMSCO), is statutorily responsible for making a final determination with respect to public need (*see Matter of Tri-State Ambulance Serv. v State of N.Y. Dept. of Health*, 114 AD2d 546, 547 [1985]), the majority nevertheless focuses on the manner in which REMSCO considered petitioner's application. We disagree that any flaws in REMSCO's process should somehow be attributed to SEMSCO. Accordingly, we are of the view that our review should center on whether SEMSCO properly considered the presumption.

petitioner meet a specific need of the population it proposes to serve; it merely creates a legal inference that such is the case.[12] Thus, the presumption permits Kunkel to respond to petitioner's evidence with evidence to the contrary.[13]

Notably, in its initial application, the primary basis cited by petitioner for its assertion of a public need for its ambulance service was a prior lack of continuity of patient care, as well as limited availability on Kunkel's part to provide services within the City of Utica. Although one SEMSCO member commented that petitioner's submissions lacked statistical documentation to support such assertions, they were nevertheless sufficient— particularly given the presumption to which petitioner's application was entitled—to shift the burden to Kunkel to demonstrate persuasive evidence of the absence of a need for petitioner's services. To that end, Kunkel submitted the affidavits of its vice-president and finance officer, as well as its director of operations, video recordings and an "availability study," all of which demonstrated that Kunkel had available ambulances, could successfully cover ambulance calls during fires and had consistently met Department of Health training, staffing and equipment standards. Kunkel also refuted petitioner's assertion that it could provide greater continuity of service. Overall, mindful that we may not substitute our judgment for that of SEMSCO, we discern no basis to conclude that SEMSCO's determination—that Kunkel sufficiently rebutted petitioner's argument that Kunkel's services were inadequate to meet the public need without petitioner's assistance—was "arbitrary, capricious or affected by error of law" (*Matter of Senior Care Servs., Inc. v New York State Dept. of Health*, 46 AD3d 962, 965 [2007]).[14]

Significantly, the record reflects that SEMSCO fully discussed

---

**12.** Notably, if the Legislature had intended to completely eliminate the requirement that a municipality demonstrate public need after performing satisfactorily during the initial two-year period, it could have explicitly "deemed" such requirement to have been met and/or imposed an irrebuttable presumption, but did not do so. In fact, an earlier version of the bill that ultimately passed (S 7660-A, A 10611-A) would have exempted municipal ambulance services from Public Health Law § 3008 (*see* Sponsor's Mem, Bill Jacket, L 1992, ch 850).

**13.** We also disagree with the majority's unsupported assumption that Public Health Law § 3008 (7) was intended to replace Public Health Law § 3008 (6), a view that is contrary to well-recognized principles of statutory construction (*see e.g.* McKinney's Cons Laws of NY, Book 1, Statutes §§ 98, 144, 231). Nevertheless, such difference of opinion is immaterial to the issue here.

**14.** In view of the fact that petitioner was not previously required to demonstrate public need at all, since it was initially deemed to satisfy that require-

and considered the presumptions afforded to petitioner and the evidence in support of and in opposition to petitioner's application. Indeed, one SEMSCO member—who was also a member of REMSCO—articulated that "[t]here was much discussion about [the] presumption" at the REMSCO level and that Kunkel had overcome any presumption to which petitioner was entitled. Our review of the record also reveals that SEMSCO was troubled by the notion that petitioner's true purpose in seeking to provide ambulance services was not to improve the continuity of care to its residents but, rather, to generate revenue. In our view, SEMSCO considered the relevant circumstances and accorded petitioner's application the benefit of the presumption.[15] Thus, while we recognize the economic investment made by petitioner into the establishment of such services, we would affirm Supreme Court's judgment.

Spain, J., concurs. Ordered that the appeal from the order is dismissed, without costs. Ordered that the judgment is reversed, on the law, without costs, determination of respondent New York State Emergency Medical Services Council annulled and petition granted to that extent.

---

ment, we disagree with the majority's criticism of REMSCO's "look back" approach. Nor do we find it inappropriate to take into account the previously existing circumstances, in addition to examining the service provided during the initial two-year period and looking forward to the future ability to provide ambulance services. The record reflects that petitioner and Kunkel addressed all of these circumstances and, in our view, SEMSCO properly considered them.

15. The comments of one of SEMSCO's members referred to by the majority do not lead us to conclude otherwise. While we agree that the statute is not a model of clarity and there was undoubtedly some confusion on the part of this member, when viewed in the light of the entire record of SEMSCO's proceedings subsequent to such comments, it is evident that the significance and effect of the presumption was clarified and discussed at some length.